**Case No. 22-99009**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

KEVIN JAMES LISLE,

Petitioner - Appellant,

v.

WILLIAM GITTERE, et al.

Respondents - Appellees,

---

ON APPEAL FROM THE U.S. DISTRICT COURT
FOR THE DISTRICT OF NEVADA
Case No. 2:03-cv-1006-MMD-DJA

DEATH PENALTY CASE

---

**RESPONDENTS-APPELLEES' SUPPLEMENTAL ANSWERING BRIEF**

---

AARON D. FORD
Attorney General
MICHAEL J. BONGARD
Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
1539 Avenue F, Suite 2
Ely, Nevada 89301
(775) 289-1630 (phone)
(775) 289-1653 (fax)
mbongard@ag.nv.gov
*Attorneys for Respondents-Appellees*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

ISSUES PRESENTED.....................................................................................................1

STATEMENT OF THE CASE...........................................................................................1

I.   THE NEVADA SUPREME COURT AND FEDERAL DISTRICT COURT DENIED LISLE'S CLAIMS OF PROSECUTORIAL MISCONDUCT. .................................................................1

   A.   The Trial Court Sustained Defense Counsel's Objections to the "Send a Message" Statement in Claim 8(C). ..............................................................................1

   B.   The Nevada Supreme Court Rejected Lisle's Claim of Prosecutorial Misconduct. ..........................................................................................................3

C.   THE DISTRICT COURT DENIED RELIEF ON GROUND 8(C)..........................................3

II.  THE FEDERAL DISTRICT COURT DISMISSED UNTIMELY CLAIMS AND DISMISSED PROCEDURALLY DEFAULTED CLAIMS.............................................................................6

   A.   Lisle Filed Five Separate Federal Petitions. ...............................................6

   B.   The District Court Dismissed Untimely Claims................................................7

   C.   The District Court Dismissed Procedurally Defaulted Claims. ..................9

SUMMARY OF ARGUMENT .........................................................................................12

ARGUMENT ...............................................................................................................14

I.   STANDARD OF REVIEW .......................................................................................14

II.  THE DISTRICT COURT PROPERLY DISMISSED LISLE'S UNTIMELY CLAIMS AFTER GRANTING EQUITABLE TOLLING, AND LISLE FAILED TO DEMONSTRATE A BASIS FOR FURTHER EQUITABLE TOLLING. ........................................................................15

   A.   The District Court Correctly Determined that Lisle Failed to Establish a Basis for Equitable Tolling After the United States Supreme Court Decided Mayle...........................................................................................................16

      1.   Equitable tolling is available only when the petitioner shows that extraordinary circumstances prevented timely filing and diligence..............17

      2.   Lisle fails to demonstrate Mayle created uncertainty regarding relation back. ...............................................................................................................18

      3.   Lisle's Physical and Mental State Fails to Justify Equitable Tolling.....23

   B.   Ross Fails to Support Lisle Argument for Relation Back. ..........................26

III. LISLE HAS NOT ESTABLISHED CAUSE AND PREJUDICE FOR HIS PROCEDURALLY DEFAULTED CLAIMS.................................................................................................29

   A.   Status of Lisle's Claims Dismissed Because of Procedural Default. ........29

      1.   Claim 9(B) was dismissed as untimely, not defaulted. ..........................29

      2.   Claims dismissed solely as procedurally defaulted. ..............................30

i

      3.    Claims found defaulted after briefing on the merits.............................30

   B.   *Nevada's Procedural Bars are Adequate.* ...................................................*31*

      1.    Nev. Rev. Stat. § 34.810 is adequate for default purposes....................31

      2.    Nev. Rev. Stat. §§ 34.800 and 34.726 are also adequate. ......................33

   C.   *Martinez Does Not Excuse Lisle's Defaults of Claims Raising Ineffective Assistance of Trial Counsel.*.....................................................................................*39*

   D.   *Lisle Arguments Regarding Default of Claims 4 and 5.* ............................*41*

IV.    THE STATE COURT REJECTION OF CLAIM 8(C) WAS NOT OBJECTIVELY UNREASONABLE. AND IF THE COURT FINDS ERROR, IT DID NOT DEPRIVE LISLE OF A FAIR TRIAL. ..........................................................................................................42

   A.   *Because the Trial Court Sustained Defense Counsels' Objection and Instructed the Jury to Disregard the Comment, no Error Occurred with Respect to the "Send A Message" Argument.*....................................................*42*

   B.   *The Nevada Supreme Court Found Lisle's Claim Raising the "Send a Message" Argument Meritless.*.....................................................................*43*

   C.   *The District Court Denied Lisle's "Send a Message" Claim.*....................*44*

   D.   *The Record, and Darden Supports the District Court's Determination That the Prosecutor's Comment did Not Deprive Lisle of a Fair Trial.*....................*45*

   E.   *That Court Found Lisle's Other Claim 8(C) Allegations Technically Exhausted and Procedurally Defaulted.* ...........................................................*46*

CONCLUSION ...................................................................................................................48

STATEMENT OF RELATED CASES .................................................................................49

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS .............................................50

CERTIFICATE OF SERVICE .............................................................................................51

# **TABLE OF AUTHORITIES**

<span style="letter-spacing:2px">CASES</span>

*Beard v. Kindler*, 558 U.S. 53 (2009) ...................................................... 32, 33, 39

*Bills v. Clark*, 628 F.3d 1092 (9th Cir. 2010) ..........................................................23

*Coleman v. Thompson*, 501 U.S. 722 (1991).................................................. 18, 47

*Crump v. Warden*, 934 P.2d 247 (Nev. 1997) .................................................. passim

*Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)......................................................45

*Doyle v. Royal*, 161 F.4th 570 (9th Cir. 2025)........................................... 19, 21, 22

*Ford v. Pliler*, 590 F.3d 782 (9th Cir. 2009) ..........................................................18

*Frye v. Hickman*, 273 F.3d 1144 (9th Cir. 2001)....................................................18

*Harrington v. Richter*, 562 U.S. 86 (2011)..........................................................4, 15

*Hathaway v. State*, 71 P.3d 503 (Nev. 2003)................................................ 36, 37, 38

*Hogan v. Bean*, 140 F.4th 1001, 1037 (9th 2025) ............................................ 32, 33

*Holland v. Florida*, 560 U.S. 631 (2010)................................................................17

*Johnson v. Lee*, 578 U.S. 605 (2016)   32, 33, 39

*Johnson v. Williams*, 568 U.S. 289, 298 (2013) .....................................................14

*Klein v. Martin*, 607 U.S. 213, (2026) ................................................................ 33,

*Lambert v. Blodgett*, 393 F.3d 943, (9th Cir. 2004) ...............................................15

*Lawrence v. Florida*, 549 U.S. 327 (2007) ...................................................... 18, 23

*Lockyer v. Andrade*, 538 U.S. 63 (2003) ................................................................15

*Manning v. Foster*, 224 F.3d 1129 (9th Cir. 2000)..................................................15

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003)....................................................32

*Moran v. McDaniel*, 80 F.3d 1261 (9th Cir. 1996)............................................ 36, 38

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005)..................................................... 22, 25

*Pellegrini v. State*, 34 P.3d 519 (Nev. 2001) ......................................... 35, 36, 37, 38

*Rasberry v. Garcia*, 448 F.3d 1150 (9th Cir. 2006) ......................................... 15, 17

*Rippo v. State*, 423 P.3d 1084 (Nev. 2018)...................................................... 35, 37

*Ross v. Williams*, 950 F.3d 1160 (9th Cir. 2020)...................................... ..... passim

*Ryan v. Gonzales*, 568 U.S. 57 (2013)......................................................... 9, 12, 24

*Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005) .............................................18

*Smith v. Davis*, 953 F.3d 582 (9th Cir. 2020).........................................................17

*Sossa v. Diaz*, 729 F.3d 1225 (9th Cir. 2013)........................................................22

*Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003) ....................................................18

*State v. Eighth Judicial Dist. Ct. (Riker)*, 112 P.3d 1070, 1077 (Nev. 2005) ............
................................................................................................................. 36, 38, 39

*Thomas v. State*, 510 P.3d 754 (Nev. 2022) ..........................................................38

*United States v. Ortega-Asciano*, 376 F.3d 879 (9th Cir. 2004) .............................43

*Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002)........................................... 32, 33

*Waldron-Ramsey v. Pacholke*, 556 F.3d 1008 (9th Cir. 2009).................. 17, 18, 25

*Walker v. Martin*, 562 U.S. 307 (2011) ...................................................... 32, 33, 39
*Weeks v. Angelone*, 528 U.S. 225 (2000) ........................................................... 43, 46
*White v. Woodall*, 572 U.S. 415 (2014) ..................................................................14
*Williams v. Filson*, 908 F.3d 546 (9th Cir. 2018) ................................ 12, 19, 36, 45
*Witter v. State*, 921 P.2d 886 (1996) .................................................................3, 44
*Yarborough v. Alvarado*, 541 U.S. 652 (2004) ........................................................15

## STATUTES

28 U.S.C. § 2254 ......................................................................................................1
Nev. Rev. Stat. § 34.726 ............................................................................. 33, 36, 37
Nev. Rev. Stat. § 34.800 ........................................................................................39
Nev. Rev. Stat. § 34.810(1)(b) ................................................................... 31, 32, 33

## OTHER

Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) .............. passim

iv

## ISSUES PRESENTED

The Court ordered a Supplemental Answering Brief on the following issues:

(1) "[W]hether the district court properly dismissed claims under AEDPA's statute of limitations, including whether appellant has provided grounds to excuse any untimeliness;" Dkt. 43.

(2) "[W]hether the district court properly dismissed claims as procedurally defaulted, including whether appellant has provided grounds to excuse any default." Dkt. 43.

(3) The Court also expanded the certificate of appealability to address: "[W]hether the prosecutor committed misconduct as alleged in Claim 8(C)." Dkt. 43.[1]

## STATEMENT OF THE CASE

I. **The Nevada Supreme Court And Federal District Court Denied Lisle's Claims Of Prosecutorial Misconduct.[2]**

A. **The Trial Court Sustained Defense Counsel's Objections to the "Send a Message" Statement in Claim 8(C).**

During the closing arguments of the trial's penalty phase, the prosecutor

---

[1] Items in the Excerpt of Records are denoted by volume and page number. (___-ER-___). Items in the district court record (45-ER-13087) are referenced by page of the docket and docket number (45-ER-___ (ECF No. __)). Items in the supplemental except filed with this brief are referenced "SER ___." Items in this Court's docket, the opening brief are referenced "Dkt. __ at ___."

[2] The additional facts are set forth in chronological order.

stated, "The death penalty is something that has been approved not only by our society but our Legislatures and upheld by the courts. It is a legal way of doing something that none of us wants to do." The prosecutor then compared the capital trial process to what Lisle did when he shot Justin Lusch and Kip Logan.[3] 45-ER-13016. The defense objected, and the court sustained the objection. 45-ER-13016.

Discussing the available sentences, the prosecutor prefaced his comments with the comment that the jury had choices. 1-ER-13018. After discussing the choices Lopez made, the prosecutor said:

> Your verdicts here today do a lot of things, one of which is to send a message - - a message to society and it's incumbent upon you to think about what that message is going to be. Let me ask you this: Is your message going to be that if you deal drugs, if you carry guns, if you belong to gangs, if you conspire to kill and indeed you do go out and kill that we're going to give you life with the possibility of parole and one day let you perhaps be walking the streets a free person at the same time the Lusch's are visiting their son's grave? If it is, then be lenient on poor Jerry Lopez. Or might you prefer to send a message to the gang-bangers and the dope dealers and the gun carriers and the killers to be that you're not going to tolerate this type of action in our society.

45-ER-13022.

Defense counsels for both defendants objected, the trial court sustained the

---

[3] Previous, to the verdict and sentence in this case, a jury sentenced Lisle to death for first-degree murder in the death of Kip Logan. The district court's denial of habeas relief on Lisle's conviction for the Logan murder is also before this Court in case number 21-99009.

2

objections, and it struck the comments before explicitly ordering the jury "to disregard" the stricken comment. 45-ER-13022.

At the end of rebuttal, the prosecutor stated "Tell Jerry Lopez there's a new gang in town and it's called a jury. Thank you." 45-ER-13023. The defense never objected.

## B. The Nevada Supreme Court Rejected Lisle's Claim of Prosecutorial Misconduct.

On direct appeal, the Nevada Supreme Court rejected Lisle's argument for misconduct based upon the "send a message" comment by the prosecutor. 17-ER-4730. The court determined, "Lisle's attorney made an objection, the judge sustained it and admonished the jury to disregard those statements." 17-ER-4730.

The court then denied the claim. 17-ER-4730-31. Citing its decision from *Witter v. State*, 921 P.2d 886, 898 (1996), which addressed "substantially similar" statements during the penalty phase of a capital trial, the Nevada Supreme Court indicated its view that such statements are permissible during a penalty hearing because "the comments 'properly focus on what would be an appropriate punishment under the facts and circumstances of the case, as well as what would be necessary to deter others from committing such a brutal act.'" 17-ER-4731.

## C. The District Court Denied Relief on Ground 8(C).

Lisle raised the prosecutorial misconduct claim about sending a message, along with two other unexhausted claims of misconduct in Ground 8(C) of his

3

federal petition. 4-ER-949. Lisle argued the unexhausted claims alleged the prosecutor "tried to lessen the jurors' responsibility for voting to impose death" and argued "[t]ell Mr. Lopez there's a new gang in town and its(sic) called a jury." 4-ER-951.

The district court denied relief on Ground 8(C). Addressing Lisle's claim on sending a message to the jury, the court found that "Defense counsel objected to this argument, and the trial court sustained the objection and ordered the jury to disregard the argument." 1-ER-37.

The district court determined, "With regard to the federal constitutional aspect of the claim, the Nevada Supreme Court denied relief without discussion." 1-ER-38. So, the court stated that it "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." 1-ER-38 (citing *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

The district court determined that "the send-a-message" argument was improper. 1-ER-38. However, applying *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), that court determined "the offending argument was not extensive or prominent within the context of the prosecution's entire closing argument." 1-ER-38-39. The court found that "the prosecutor did not misstate evidence" and the

4

improper argument was not magnified by improper instructions. 1-ER-39. Instead, the court determined that the jury instructions contradicted the argument "about what they were to consider in choosing a sentence." 1-ER-39. As discussed below the district court determined "the Nevada Supreme Court's denial of relief on this claim was consistent with *Darden*. 1-ER-41.

In 2022, the district court issued a show cause order directing the parties to brief the potential procedural default of several claims, including the two remaining claims in Claim 8(C). 1-ER-87, 88-89. The parties subsequently filed their responses to the court's order to show cause. *See* 45-ER-13138 (ECF Nos. 477 and 478).[4] The parties briefed the issue. SER-3, 11. Lisle's supplemental briefing never addressed excusing default of the two unexhausted claim in Ground 8(C). SER-11.

Addressing the two remaining allegations in Claim 8(C), the district court determined "on his direct appeal and his appeal in his first state habeas action, Lisle did not claim prosecutorial misconduct with respect to either of these arguments." 1-ER-41. The court determined "these arguments are therefore subject to denial as procedurally defaulted," adding Lisle presented no argument in his supplemental briefing to overcome the procedural default. 1-ER-41.

---

[44] The clerk's docket shows that Respondents filed ECF No. 477. However, the entry reflects Lisle's counsel actually filed that document.

**II.** **The Federal District Court Dismissed Untimely Claims And Dismissed Procedurally Defaulted Claims.**

**A. Lisle Filed Five Separate Federal Petitions.**

Lisle filed his initial federal habeas petition on August 20, 2003. 31-ER-8959. That petition consisted of a form petition, with the notation, "See attached pleadings. Exs. 3, 4," under Ground 1. 31-ER-8961. Lisle then attached the following exhibits: (1) Exhibit 1, consisting of the Nevada Supreme Court's affirmance of Lisle's convictions and sentence in case number 28773 (31-ER-8970); (2) Exhibit 2, consisting of the Nevada Supreme Court's order affirming the denial of Lisle's state habeas petition in case number 37211 (31-ER-8991); (3) Exhibit 3, consisting of Lisle's opening brief in case number 37211 (31-ER-9001); and (4) Exhibit 4, consisting of Lisle's reply brief in case number 37211. 31-ER-9065.

Lisle filed a first amended federal petition on May 20, 2008. 28-ER-8157 through 29-ER-8393. On March 25, 2013, Lisle filed a second amended petition. 24-ER-24-ER-6887 (starting page). Lisle filed a third amended petition in April of 2014. 23-ER-6483. Respondents filed a motion to dismiss the third amended petition. 23-ER-6467 through 22-ER-6434. Lisle then filed a motion to file a supplement to his third amended petition (45-ER-13113 (ECF No. 268)), which the court granted. 45-ER-13114-15 (ECF No. 284).

Lisle filed a fourth amended petition on April 21, 2017. 3-ER-652 through

6

5-ER-1179. The petition was "filed on a court form," and "in the section where the petition was to state his first ground for relief," the petition stated "See attached pleadings. Exs. 3, 4." 1-ER-109. Exhibits 3 and 4 "were copies of Lisle opening brief and reply brief on the appeal in his first state habeas action."

**B. The District Court Dismissed Untimely Claims.**

The district court issued a July 2018 order addressing the motion to dismiss. 1-ER-93. That order discussed the filing of Lisle's original and first amended petitions. The court found that "at total of 418 days ran against the one-year AEDPA limitations period before Lisle filed his original habeas petition" on August 20, 2003. 1-ER-106-07. The court stated, "Without equitable tolling, Lisle's original habeas petition was filed fifty-three days late and would be barred by the statute of limitations." 1-ER-107. The court added, "Beyond that, Lisle's first amended petition was filed more than four and a half years later, on May 20, 2008." 1-ER-107.

The court found that 38 days elapsed between October 5, 1998, "when the United States Supreme Court denied his petition for certiorari" and when he filed his first state court habeas petition on November 12, 1998. 1-ER-106.

The court then granted equitable tolling comprising two time periods: First, the court granted equitable tolling from the completion of Lisle's first state habeas action to the appointment of counsel in federal court, a period between August 5,

7

2002, through January 22, 2004. 1-ER-107-09.

Second, the court granted tolling from the date the court appointed counsel on January 22, 2004, through June 23, 2005, the date the Supreme Court issued its decision in *Mayle v. Felix*, 545 U.S. 644 (2005). 1-ER-109.

The court determined that absent further tolling, Lisle's limitation period lapsed on May 16, 2006. 1-ER-111. The court conducted a claim-by-claim analysis to determine if claims related back to Lisle's state habeas briefs. 1-ER-117-50. The court found the following claims timely because they related back to facts raised in Lisle's Exhibits 3 & 4:

- The Claim 1 allegation asserting ineffective assistance of trial counsel in the guilt phase, for failing to object to the prosecutor's expressions of his personal opinion and aligning himself with the jury in closing arguments;

- The Claim 1 allegation asserting ineffective assistance of trial counsel in the penalty phase for failing to object to the prosecutor's expressions of personal opinion and aligning himself with the jury in closing arguments;

- The Claim 1 allegation asserting ineffective assistance of trial counsel in the penalty phase of the trial for failing to object to the prosecutor's argument that allegedly improperly shifted the burden to the defense to prove that mitigating circumstances did not outweigh aggravating circumstances;

- The Claim 1 allegation asserting ineffective assistance of trial counsel in the penalty phase of the trial, for failing to object to the prosecutor's argument that the jury should "send a message;"

- The Claim 1 allegation asserting ineffective assistance of trial counsel

8

in the penalty phase of the trial, for failing to object to the prosecutor's argument that Lisle would present a danger in the future;

- Claims 2, 8(A), 8(B)(1), 8(C), and 8(E);

- Claim 8(G) regarding Claims 8(A), 8(B)(1), 8(C), and 8(E);

- The claims of ineffective assistance of trial counsel in Claim 8(H) regarding Claims 8(A), 8(B)(1), 8(C), and 8(E);

- Claim 10, except for the claims of ineffective assistance of appellate and post-conviction counsel;

- Claim 16, except for the claims of ineffective assistance of appellate and post-conviction counsel;

- Claims 22(B), 28, and 29.

1-ER-153.

The court dismissed the remaining claims because they did not relate back to the state habeas briefs. 1-ER-117-50.

**C. The District Court Dismissed Procedurally Defaulted Claims.**

The court discussed the procedural default doctrine, including a discussion about applying procedural defaults to unexhausted claims. 1-ER-113-14 (citing *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014)). The court determined that, "In light of the procedural history of this case, and, in particular, the rulings of the state courts in Lisle's second state habeas action, it is plain that Lisle's unexhausted claims would be ruled procedurally barred in state court if Lisle were to return to state court to attempt to exhaust those claims." 1-ER-114. The court

9

considered Lisle's unexhausted claims "to be technically exhausted, but subject to the procedural default doctrine." 1-ER-114 (citing *Dickens*, 740 F.3d at 1317).

The court also determined that "claims he asserted for the first time in state court" during the second state habeas action that were barred by Nev. Rev. Stat. §§ 34.726, 34.810, and 34.800 "are subject to the procedural default doctrine." 1-ER-115. And the court found Nev. Rev. Stat. §§ 34.726 and 34.800 independent and adequate to support procedural default and further determined that Nev. Rev. Stat. § 34.810 was inadequate. 1-ER-117.

The court determined that the only claims Lisle defaulted that were not untimely were: Claim 8(H) allegations of ineffective assistance of appellate and post-conviction counsel (1-ER-129); Claim 10 allegations of ineffective assistance of appellate and post-conviction counsel (1-ER-131); and the ineffective assistance of appellate and postconviction counsel claims in Claim 16. The court found several other claims were both untimely and procedurally defaulted.[5]

---

[5] Those claims are: Claim 3(B) (admitting bad acts evidence) (1-ER-122-23); Claim 4 (1-ER-124); Claim 5 (1-ER-124-25); All non-ineffective assistance of trial counsel claims in Claim 7 (1-ER-126); All non-ineffective assistance of trial counsel claims in Claims 8(B)(2), 8(D), and 8(F) (1-ER-128); All Claim 9 allegations except for ineffective assistance of trial counsel allegations (1-ER-130); the ineffective assistance of appellate counsel claim in Claim 11 (1-ER-131); the ineffective assistance of appellate and post-conviction counsel allegations in Claim 13 (1-ER-133); the ineffective assistance of trial counsel claims in Claim 14 (1-ER-134); allegations in Claim 15 with the exception of ineffective assistance of trial counsel (1-ER-135-36); all allegations in Claim 19, except for claims of

10

After supplemental briefing pursuant to the court's show cause order, the court considered whether Lisle could show cause and prejudice to excuse procedural default of Claims 8(A), parts of 8(C), and Claims 16(B), (C), (E), and (F). 1-ER-91. As discussed above, supra, Statement of the Case I(C), the court found the unexhausted parts of Claim 8(C) procedurally defaulted. 1-ER-41.

The court denied Claim 8(A)(1) (the prosecutor used phrases such as "I know") and Claims 16(B) (severance prejudiced Lisle because the prosecution introduced evidence of an unrelated homicide) and (C) (the failure to sever resulted in the use of false testimony) on the merits. 1-ER-24-26, 71-78.

The court found Claims 8(A)(2) (a prosecutor stated ""I want you to understand" the death penalty was available for both Lisle and Lopez), 8(A)(3) (the prosecutor argued "that's ridiculous" in response to a defense argument a witness was lying) and 8(A)(4) (a prosecutor used "we" and "us" in argument) procedurally defaulted because Lisle never raised the claims on direct appeal or in the appeal of Lisle's first state habeas petition. 1-ER-26. Lisle only argued *Martinez v. Ryan*, 566 U.S. 1 (2011), to excuse the default. 1-ER-26. The court found the substantive claims defaulted. 1-ER-26.

---

ineffective assistance of trial counsel (1-ER-140); allegation in Claim 21, except for claims of ineffective assistance of trial counsel (1-ER-141); Claim 23 (1-ER-142); Claims 25-27 (1-ER-143-44); Claim 30 (1-ER-145); the substantive portions of Claims 31-36 (1-ER-146-50).

11

Addressing the IAC claims, the court found the pronoun use was not for an improper purpose and the response to the defense argument that a witness was lying was proper. 1-ER-27-28. The court determined that the underlying claims were not substantial because there was no misconduct. 1-ER-29.

The court determined substantive Claims 16(E) (admission of Lopez's alibi prejudiced Lisle) and 16(F) (failure to sever denied Lisle an individualized sentencing determination) were procedurally defaulted because Lisle failed to raise the substantive claims in his direct appeal or appeal in his first state habeas action and failed to demonstrate cause and prejudice to excuse the default. 1-ER-81-82.

## SUMMARY OF ARGUMENT

The Court should affirm the dismissal of Lisle's untimely claims. Lisle failed to demonstrate that he is entitled to additional equitable tolling. Just as this Court would later hold in *Williams v. Filson*, 908 F.3d 546 (9th Cir. 2018), the district court determined that the Supreme Court's decision in *Mayle* clarified relation back of claims in an amended petition and created no confusion for Lisle that supported additional tolling.

Lisle's mental or physical condition also fails to provide a basis for equitable tolling. Lisle presents no specific incident of his physical impairments that prohibited timely filing. Additionally, the allegations of Lisle's mental impairment occurred primarily after Lisle filed his amended federal petition. Lisle also

12

provides no facts that his physical or mental impairments prohibited Lisle from filing a protective petition.

Finally, Lisle fails to demonstrate that this Court's decision in *Ross v. Williams*, 950 F.3d 1160 (9th Cir. 2020), supports relation back of his untimely claims. Lisle's original federal petition specifically referenced which exhibits provided a basis for his claims. The district court therefore used those exhibits when determining relation back.

Lisle also fails to demonstrate that the district court's dismissal of procedurally defaulted claims constitutes reversible error. First, most of Lisle's defaulted claims were also untimely, so this Court need not reach the procedural default arguments of those claims unless this Court reverses on timeliness.

Lisle fails to demonstrate that Nevada procedural default statutes are inadequate, or that the statutes applied by the state court to default his claims were not clearly applied to every claim in his second state petition.

Next, the district court did not err when finding several of Lisle's defaulted ineffective assistance of trial counsel claims defaulted even after considering *Martinez*. The district court's determination that the claims were not substantial is supported by the record.

Finally, the Nevada Supreme Court did not apply clearly established federal law in an objectively unreasonable manner when it rejected the exhausted portion

13

of Lisle's Ground 8(C) claim. The district court analyzed both the state court decision and the state court record and determined that the state court decision was not unreasonable. And in any event, the claim fails because (1) there is no error to review given the trial court's ruling sustaining defense counsels' objection and express instruction to the jury to disregard the statement, and (2) even on a de novo review, any misconduct does not rise to the level of a due process violation under *Darden*.

## ARGUMENT

## I. STANDARD OF REVIEW

This action is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which "sharply limits" the federal court's review of claims adjudicated on the merits in state court. *Johnson v. Williams*, 568 U.S. 289, 298 (2013).

The Supreme Court recognized that AEDPA's standard "is 'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (*quoting Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)). The state court's decision must be more than wrong, because "even 'clear error'" does not merit relief under the "objectively unreasonable" standard. *Woodall*, 572 U.S. at 419 (*citing Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

When discussing review of state court application of broad constitutional

14

standards, the Supreme Court discussed the "more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (*citing Yarborough v. Alvarado*, 541 U.S. 652, 644 (2004).

"[This Court] review[s] *de novo* the district court's decision to grant or deny a petition for writ of habeas corpus." *Lambert v. Blodgett*, 393 F.3d 943, 964 (9th Cir. 2004) "Factual findings and credibility determinations made by the district court in the context of granting or denying the petition are reviewed for clear error." *Id.* "[T]he district court's application of AEDPA, as well as its conclusion that the standards set forth in AEDPA are satisfied, is a mixed question of law and fact which we review *de novo*." *Id*. at 965. This Court also reviews de novo dismissal of claims for procedural default or timeliness. *Manning v. Foster*, 224 F.3d 1129, 1132 (9th Cir. 2000) (review of defaulted claims); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006). The district court factual finding underlying a claim for tolling are reviewed for clear error. *Id*.

## II. The District Court Properly Dismissed Lisle's Untimely Claims After Granting Equitable Tolling, And Lisle Failed To Demonstrate A Basis For Further Equitable Tolling.

Lisle argues that "he was entitled to equitable tolling of the federal statute of limitation until at least the filing of his first amended federal habeas petition in 2008." Dkt. at 83. Lisle bases his arguments on: (1) the uncertain state of the law after the Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005) (Dkt. 20

at 85); (2) he is entitled to equitable tolling because of Lisle's physical and mental state (Dkt. 20 at 95); and (3) this Court's decision in *Ross v. Williams*, 950 F.3d 1160 (9th Cir. 2020) to support arguments on relation back. Dkt. 20 at 101.

### A. The District Court Correctly Determined that Lisle Failed to Establish a Basis for Equitable Tolling After the United States Supreme Court Decided Mayle.

The court described Lisle's original petition as "filed on August 20, 2003." 1-ER-109. And the Court awarded Lisle equitable tolling for a period of multiple years, concluding with the U.S. Supreme Court's decision in *Mayle*. 1-ER-107-111. First, the Court concluded that a delay in appointment of counsel in the federal habeas proceeding, combined with other circumstances, warranted an award of tolling for the period of time between the conclusion of Lisle's first state habeas proceeding through the appointment of counsel in federal court. 1-ER-107-109. And the Court also awarded tolling based upon uncertainty on application of relation back in habeas cases that existed pre-*Mayle*. 1-ER-109-111.

But the Court rejected Lisle's argument for equitable tolling beyond the date the Supreme Court decided *Mayle*, June 23, 2005. 1-ER-111-112. This Court's case law supports that conclusion. As this Court indicated in *Williams*, consistent with the district court's reasoning, *Mayle* resolved prior uncertainty about application of the relation-back standard to habeas cases. 908 F.3d at 558-61. And

16

he otherwise failed to show that his physical or mental condition provided a basis for an award of additional tolling.

### 1. Equitable tolling is available only when the petitioner shows that extraordinary circumstances prevented timely filing and diligence.

To obtain equitable tolling, a petitioner must show that extraordinary circumstances prevented him from filing his federal petition on time. *Holland v. Florida*, 560 U.S. 631, 649 (2010). And he must show reasonable diligence "before, during, and after the existence of 'an extraordinary circumstance'" to obtain equitable tolling. *Smith v. Davis*, 953 F.3d 582, 595 (9th Cir. 2020) (en banc).

No matter how diligently a petitioner acted, his failure to establish extraordinary circumstances prevented him from filing a timely petition is dispositive on a claim of equitable tolling. *See Rasberry*, 448 F.3d at 1153. And, if a petitioner did not act diligently in pursuing his rights there is no equitable tolling to be had; the lack of diligence breaks any causal link between the extraordinary circumstances and the untimely filing. S*ee Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1013-14 (9th Cir. 2009).

Instructions from a court will not serve as a basis for equitable tolling unless the court "affirmatively misled" the petitioner. *Ford v. Pliler*, 590 F.3d 782, 786 (9th Cir. 2009). And, a petitioner is not entitled to equitable tolling when his

17

untimeliness is attributable to his own "'oversight, miscalculation or negligence'" *Waldron-Ramsey*, 556 F.3d 1008 at 1011. This includes miscalculation of a filing deadline. *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (citing *Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991)). Finally, a petitioner is not entitled to equitable tolling where the alleged cause of his late filing is incorrect advice from counsel. *Frye v. Hickman*, 273 F.3d 1144 (9th Cir. 2001); *see also Shannon v. Newland*, 410 F.3d 1083, 1090 (9th Cir. 2005) (noting that findings of equitable tolling are based on "wrongful conduct" that "actually prevented the prisoner from preparing or filing a timely petition" (emphasis original)); *but see Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003) (finding an attorney's egregious misconduct would permit equitable tolling provided the petitioner could establish his own diligence during the period in which his attorney failed to fulfill an attorney's duties related to diligence and communication).

### 2. Lisle fails to demonstrate *Mayle* created uncertainty regarding relation back.

Lisle first argues that rather than clarifying the law addressing relation back, *Mayle*, created uncertainty because of the "George Memo" and his reliance on the memo and court orders both before and after *Mayle*.[6] Dkt. 20 at 85. But this

---

[6] The George Memo governed capital federal habeas proceedings in the district court. *See Williams v. Filson*, 908 F.3d 546, 556 (9th Cir. 2018). *See also* 11-ER-2979.

Court's decision in *Doyle v. Royal*, 161 F.4th 570, 584 (9th Cir. 2025), controls the answer to that question. Rather than creating uncertainty, *Mayle* settled the law on relation back, undercutting Lisle's theory for equitable tolling. And Lisle's continued reliance on scheduling orders fails to provide a proper basis for tolling. *Id*.

Lisle recognizes that after the equitable tolling granted by the district court, the AEDPA deadline for filing a timely amended petition became May 16, 2026. Dkt. 20 at 85 (citing 1-ER-111). And he seeks tolling from that date until May 20, 2008, the date Lisle filed his amended petition. Dkt. 20 at 85.

Lisle cites *Williams*, to support his diligence arguments. Dkt. 20 at 86. However, *Williams* is distinguishable on the facts. And the distinction is important when considering how this Court has applied *Williams* in *Doyle*. And this Court's analysis in Doyle aligns with the district court's determination that Mayle resolved uncertainty about application of relation back. Resolution of that uncertainty defeats Lisle's claim for tolling.

In *Williams*, the petitioner filed his original federal petition in January of 1998. 908 F.3d at 556. The district court subsequently appointed counsel for Williams in April of 1998. *Id*. After the issuance of a "George Memo," he filed his amended petition on September 17, 1999. *Id*. The Court granted tolling for

19

Williams between the expiration of the one-year statute of limitations and the date Williams filed his amended petition. *Id*. at 561.

This Court granted tolling for Williams because, although *Mayle* resolved uncertainty about application of the relation-back standard, the Supreme Court did not decide *Mayle* until 2005. Id. at 560-61. As a result, Williams could not unwind the clock and go back to 1998-1999 armed with the information that the Supreme Court provided in *Mayle*. *Id*. at 559-60 ("The Supreme Court did not resolve the ambiguity in how Rule 15(c) should be interpreted until after Williams had filed his amended petition, at which point it was too late for him to cure any timeliness issues that arose as a result.").

But the facts here are materially different. Lisle filed his original habeas petition before the Supreme Court's decision in *Mayle*, and his amended petition almost three years after the Supreme Court decided *Mayle*. 28-ER-8157 through 29-ER-8393. And this Court already said that the confusion about relation back that supported tolling in *Williams* will not support equitable tolling "after *Mayle* clarified the proper interpretation of Rule 15" and relation back of claims to an original petition. 161 F.4th at 584.

Like Lisle, the petitioner in *Doyle* filed his initial federal habeas petition in 2000 (pre-Mayle). 161 F.4th at 577. Doyle filed his amended petition in 2008, after completing discovery. *Id*.

20

Just as the district court rejected Lisle's arguments for tolling based upon uncertainty in the district court's orders after *Mayle*, this Court in *Doyle* rejected petitioner's claim for tolling because "under the district court's order, he was not required to file an amended petition until discovery was complete." *Id*. at 584.

The Court explained "until *Mayle* was decided," the Ninth Circuit's interpretation of relation back might have allowed a petitioner to believe they faced no time limit for filing amended petitions. *Id*. But this Court held that the prior interpretation "cannot support tolling for the period after *Mayle* clarified the proper interpretation of Rule 15. *Id*. *See also Williams*, 908 F.3d at 561.

Similar to the petitioner in *Doyle*, Lisle waited "almost three years to file" his amended petition. 161 F.4th at 584 (Doyle filed amended petitions in 2008 and 2016). And this Court rejected the claim that reliance on the George Memo provided a basis for tolling post-*Mayle*, noting that the orders relied on recognized the district court's finding that the orders Doyle relied on "said nothing about the statute of limitations." *Id*.

The district court's reasoning here aligns with *Doyle*. The district court recognized that the scheduling order "did not mention the statute of limitations or purport to have any effect on its application." 1-ER111. And the court rejected Lisle's argument that it was reasonable for him to rely on the

21

scheduling orders to think his amended petition would be considered timely after *Mayle* clarified the relation back standard. 1-ER-111.

But even without *Doyle*, another Supreme Court case decided just prior to *Mayle* further undercuts Lisle theory of tolling. *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005). As the Supreme Court explained in *Pace*, when a petitioner is reasonably confused about whether his petition will be timely or not, he can file a protective petition. And because the Court issued its decision in *Pace* before its decision in *Mayle*, Lisle also knew of this possibility.

But again, Lisle waited nearly three years after the Supreme Court provided key guidance in *Pace* for habeas petitioners with confusion about whether their petition will be dismissed as untimely. Therefore, Lisle fails to show that any residual confusion after *Mayle* supports additional tolling.

Lisle asks the Court to apply *Sossa v. Diaz*, 729 F.3d 1225 (9th Cir. 2013), to his case to justify additional equitable tolling. But *Sossa* is also distinguishable. In *Sossa* the Court found tolling appropriate, because Sossa was pro se. *Id*. at 1232, 1235.

Finally, Lisle alleges that attorney misconduct occurred if this Court finds additional tolling unwarranted. Dkt. 20 at 94. However, miscalculation of a filing deadline is deemed garden variety neglect and attorney error does not warrant equitable tolling. *Lawrence*, 549 U.S. at 336-37.

22

### 3. Lisle's Physical and Mental State Fails to Justify Equitable Tolling.

Mental impairment may provide a basis for equitable tolling of a pro se petitioner. *Bills v. Clark*, 628 F.3d 1092 (9th Cir. 2010). The Court set forth a two-part standard that the petitioner must satisfy. *Id.* at 1099-100. The first step requires a showing that the petitioner was unable to understand the need to file a timely petition or the petitioner's mental state rendered him unable to prepare and file a federal petition. *Id.* The petitioner must also demonstrate diligence in pursuing his claims. *Id.* at 1100.

In his brief, Lisle argues that "counsel faced several difficulties in representing him" because of his Lisle's mental condition. Dkt. 20 at 100. He references a "letter requesting to end his appeal." Dkt. 20 at 100. However, instead of citing the letter, he cites to three pages of the district court docket (45-ER-13096-98), covering the time period between appointment of counsel and the filing of the first amended petition.

Lisle argues that his mental conviction impacted his ability to file a timely petition. Dkt. 20 at 100. However, Lisle's argument fails for two reasons. First, there is no due process right to competence of a federal habeas petitioner. *Ryan v. Gonzales*, 568 U.S. 57, 67 (2013). There, the Court noted the "backward-looking, record-based nature of most federal habeas proceedings" as a reason that

23

competence of the petitioner is not required because counsel can select meritorious claims without the petitioner's assistance. *Id*. at 68.

Second, Lisle fails to demonstrate that mental impairment affected the ability to file a timely petition.[7] While he argues that his psychiatric and mental health adversely affected his ability to raise facts for a claim that trial counsel failed to investigate and present mitigation evidence at sentencing. Dkt. 20 at 100-01. Lisle fails to state how, and when Lisle's mental impairment affected mental health evaluations. Dkt. 20 at 100-01. Given the fact that this claim revolves around the mitigation evidence that existed at the time of the sentencing phase of his trial, Lisle fails to explain why the evaluations were necessary to develop a record-based claim covering the time frame prior and during trial.

Finally, Lisle fails to show the requisite diligence. Indeed, on this point, there is irreconcilable tension between Lisle's claim that his mental condition caused the late filing and his theory that he believed his petition would be timely as long as he complied with the district court's scheduling order. Lisle did not file when he did because his attorneys were diligently trying to prepare a petition despite facing challenges resulting from Lisle's mental condition. They just

---

[7] *See, e.g.,* 1-ER-118. ("Lisle does not make any connection between his mental or physical health, or his conditions of confinement, and his counsel's ability to plead any of the claims in Claim 1 on his behalf, particularly during the period after June 23, 2005.").

wrongly thought compliance with the scheduling order would be good enough. And at minimum, Lisle could have filed a protective petition in the district court and amended the petition later. *See Pace,* 544 U.S. at 416.

The absence of a showing of diligence undercuts the proposition that Lisle's impairments are the cause of the untimely filing. *See Waldron-Ramsey*, 556 F.3d at 1013-14 (drawing the connection between diligence and causation). And counsel's mistaken belief that compliance with the scheduling order would make the amended petition timely is not an extraordinary circumstance that supports tolling. *See supra* Argument II(A)(1) and (2).

Lisle's allegations of physical impairment and prison conditions also fail to justify additional equitable tolling after *Mayle*. The federal court appointed counsel for Lisle in 2003. 1-ER-98; 45-ER-13095 (clerk's record #4).

Lisle fails to explain how his physical impairments and prison conditions impacted counsel's ability to timely file an amended petition, or at the very least, a protective petition.

For the reasons addressed above, Lisle's physical condition, his mental health, and prison conditions fail to provide a basis for additional equitable tolling after the running of the statute of limitations in May of 2006.

/ / /

/ / /

25

**B. *Ross* Fails to Support Lisle Argument for Relation Back.**

Lisle finally argues that the district court failed to properly determine relation back based upon exhibits attached to his original petition. Dkt. 101-05. Lisle supports his arguments by citing *Ross v. Williams*, 950 F.3d 1160 (9 th Cir. 2020). The petitioner in *Ross* filed a "court-provided form for habeas petitions." *Id*. at 1163. In the petition, "he asserted eight claims of ineffective assistance of counsel based on specific alleged deficiencies in his trial counsel's performance" and also "contained a short description of each claim." *Id*. Ross also attached an order from the Nevada Supreme Court affirming the denial of his state habeas petition. *Id*.

In *Ross*, the Court set forth a two-step test to determine relation back of a claim in an amended petition to "an original petition that relied on an appended written instrument to help set forth the facts on which it based its claim." 950 F.3d at 1167.

First, a reviewing court determines "what claims the amended petition alleges and what core facts underlie those claims." *Id*. Second, the court looks "to the body of the original petition and its exhibits to see whether the original petition 'set out' or "attempted to . . . set out' a corresponding factual episode." *Id*.

26

The panel in *Ross* stated, "If an exhibit to the original petition includes facts unrelated to the grounds for relief asserted in that petition, those facts were not 'attempted to be set out' in that petition and cannot form a basis for relation back." *Id*. at 1168. *Ross* supports the district court's conclusion here. This Court should affirm.

Lisle argues that he "'attempted to set out' all the claims raised in his attachments. Dkt. 20 at 103. But he fails to address the district court's factual findings supporting its decision. The district court stated, "Nothing from that exhibit [Exhibit 1] was incorporated into the grounds for relief in the petition." 1-ER-119 (citing 31-ER-8961-68). Also, the court stated, "Lisle specifically stated that the claims asserted in that petition were exhausted in state court in his first state habeas action, not on his direct appeal." 1-ER-119 (citing 31-ER-8961-62).

Unlike the petitioner in *Ross*, Lisle never really attempted to set forth any claims in the original petition; he incorporated Exhibits 3 and 4, which were the opening and reply briefs from his state habeas appeal. *See Ross*, 950 F.3d at 1163. Lisle points to nothing in the federal habeas form that attempted to set forth any other claims, including the claims he raised on direct appeal. Dkt. 20 at 101-05.

Finally, the federal habeas form contains one other clear indication that Lisle never intended to present a direct appeal claim. On page three of the form petition, Lisle checked "no" when asked if he raised the claims in his petition on direct

27

appeal. 31-ER-8961. And, on page four, Lisle checked "yes" in response to the question asking whether he raised the claims in a state petition for writ of habeas corpus. 31-ER-8962.

In other words, Lisle specifically acknowledged in the form petition that he raised the claims from his state habeas appeal *and* specifically denied raising the claims from his direct appeal, which contradicts the assertions in his brief to this Court. Not only did he *not attempt* to set out his direct appeal claims, he said he was *not raising* those claims. And that is, again, reinforced by Lisle specifically incorporating only the state habeas briefs in his petition. Therefore, contrary to Lisle's argument, the district court correctly determined that Lisle included exhibits 1 and 2 (the state court decisions) in response to the directions on the form and not in an attempt to set out the claims addressed in those exhibits. 1-ER-119; *see also* 31-ER-8959.

The panel in *Ross* stated, "If an exhibit to the original petition includes facts unrelated to the grounds for relief asserted in that petition, those facts were not 'attempted to be set out' in that petition and cannot form a basis for relation back." *Id*. at 1168. At best, Lisle's petition only attempted to raise the claims he briefed in his state habeas appeal.

*Ross* defeats Lisle's argument that the district court's application of relation back was "overly-restrictive" on this record.

28

**III. Lisle Has Not Established Cause And Prejudice For His Procedurally Defaulted Claims.**

This Court requested supplemental briefing on "whether the district court properly dismissed claims as procedurally defaulted, including whether appellant has provided grounds to excuse any default." Dkt. 43.

In his brief, Lisle argues: Nevada's procedural bars are "inadequate to bar federal review, and *Martinez v. Ryan*, 566 U.S. 1 (2012) provides "cause and prejudice to overcome any bars." Dkt. 20 at 137. Lisle also argues the district court erred by determining that Lisle failed to raise two claims on direct appeal. Dkt. 20 at 138.

**A. Status of Lisle's Claims Dismissed Because of Procedural Default.**

**1. Claim 9(B) was dismissed as untimely, not defaulted.**

In his brief, Lisle lists the claims that were procedurally defaulted, noting that many of them were also dismissed on timeliness grounds. Dkt. 20 at 137-38.

However, Respondents disagree with Lisle's statement that Claim 9(B) was dismissed solely on procedural default grounds. Dkt. 20 at 137. Claim 9(B) alleged trial counsel were ineffective for failing to object to the restraints. 4-ER-961.

The district court's order on the motion to dismiss clearly stated, "[T]he claims of ineffective assistance of trial counsel in Claim 9 are dismissed on statute of statute of limitations grounds." 1-ER-130.

/ / /

29

## 2. Claims dismissed solely as procedurally defaulted.

Prior to briefing on the merits of the Lisle's claims, the district court found the following claims timely, but procedurally defaulted: (1) claims of ineffective assistance of appellate counsel and post-conviction counsel in Claim 10 (1-ER-130-31); and (2) claims of ineffective assistance of appellate counsel and post-conviction counsel in Claim 16. 1-ER-137.[8]

Because Lisle does not address these claims in his brief, Respondents ask the Court to consider challenges to these claims forfeited.

## 3. Claims found defaulted after briefing on the merits.

After briefing the merits of Lisle's claims, the district court found several claims defaulted. Those claims included: (1) the substantive Parts 2-4 of Claim 8(A), which the court found technically exhausted and procedurally defaulted (1-

---

[8] The district court found several of Lisle's claims procedurally defaulted and untimely. Those claims included: Claim 2 (1-ER-48); Claim 3(B) (1-ER-122-23); Claim 4 (1-ER-124); Claim 5 (1-ER-124-25); Claim 7, except for IAC claims (1-ER-126); Claim 8(B)(2), (D), (F), and (H), except for IAC trial counsel claims (1-ER-127-28); Claim 9(A) and (C) (1-ER-129-30); Claim 11, only as to claims of IAC of appellate counsel (1-ER-131); Claim 13, only as to claims of IAC of appellate and post-conviction counsel (1-ER-133); Claim 14, IAC claims (1-ER-42); Claim 15, except for IAC claims and 15(B)(2) (1-ER-135-36); Claim 19, except for IAC claims (1-ER-140); Claim 21, except for IAC claims (1-ER-141); Claim 22 (A) (1-ER-141); Claim 23 (1-ER-142); Claim 25 (1-ER-143); Claim 26 (1-ER-143); Claim 27 (1-ER-144); Claim 30 (1-ER-145); Claim 31, except for IAC claims (1-ER-146); Claim 32, except for IAC claims (1-ER-147); Claim 33, except for IAC claims (1-ER-147); Claim 34, except for IAC claims (1-ER-148); Claim 35, except for IAC claims (1-ER-149); and Claim 36, except for IAC claims. 1-ER-150.

ER-26); (2) the IAC of trial counsel claims in Parts 2-4 of Claim 8(A) (1-ER-26-29 (claims not substantial)); (3) parts of Claim 8(C) arguing the prosecutor "tried lessen the jurors' responsibility for voting to impose the death penalty" and for saying "[t]ell Mr. Lopez there's a new gang in town and [it's] called a jury" (1-ER-41); (4) the IAC claims corresponding to the defaulted substantive claims in Claim 8(C) (1-ER-42) (claims not substantial); (5) Claim 16(E) and (F) (1-ER-82 (Lisle conceded neither claim raised in state court and he "made no attempt to show that he can overcome the procedural default)); and (6) Claim 16 (G) (1-ER-83-84 (the ineffective assistance of counsel claim was "completely conclusory" and not substantial)).

For the reasons below, the district court's dismissal of the claims due to procedural default was proper.

## B. Nevada's Procedural Bars are Adequate.

### 1. Nev. Rev. Stat. § 34.810 is adequate for default purposes.

The district court determined that Nev. Rev. Stat. § 34.810 was an inadequate procedural bar as applied to Lisle's case. 1-ER-117. It reached that conclusion, replying on Lisle's citations to decisions from this Court. 1-ER-117.

However, intervening Supreme Court precedent undermines this Court's rationale for finding Nev. Rev. Stat. § 34.810(1)(b) to be inadequate.

31

Previously, relying on statements from the Nevada Supreme Court that it had discretion to consider constitutional claims at any time in capital proceedings, this Court found Nev. Rev. Stat. § 34.810 to be inadequate in capital cases. *See, e.g., Valerio v. Crawford*, 306 F.3d 742, 776 (9th Cir. 2002) (en banc). But the Supreme Court of the United States has since squarely rejected the proposition that discretionary bars are per se inadequate. *Walker v. Martin*, 562 U.S. 307, 320 (2011); *see also Johnson v. Lee*, 578 U.S. 605 (2016); *Beard v. Kindler*, 558 U.S. 53 (2009). And this Court must follow the Supreme Court's intervening precedent because it is squarely at odds with this Court's prior reasoning in *Valerio* and for finding Nev. Rev. Stat. § 34.810(1)(b) inadequate. *Miller v. Gammie*, 335 F.3d 889, 893, 900 (9th Cir. 2003) (en banc).

This Court recognized the issue but declined to reach it in *Hogan v. Bean*, 140 F.4th 1001, 1037 n.16 (9th 2025). It should reach the issue here and recognize that the Supreme Court's trio of cases in *Kindler*, *Martin*, and *Lee* effectively overrule this Court's holding in *Valerio* that Nev. Rev. Stat. 34.810 is inadequate because the Nevada Supreme Court had, at one time, "exercised a general discretionary power to address" defaulted constitutional claims. *Valerio*, 306 F.3d at 778.

This Court recognized the issue but declined to reach it in *Hogan v. Bean*, 140 F.4th 1001, 1037 n.16 (9th 2025). It should reach the issue here and recognize

32

that the Supreme Court's trio of cases in *Kindler*, *Martin*, and *Lee* effectively overrule this Court's holding in *Valerio* that Nev. Rev. Stat. § 34.810 is inadequate because the Nevada Supreme Court had, at one time, "exercised a general discretionary power to address" defaulted constitutional claims. *Valerio*, 306 F.3d at 778.

### 2. Nev. Rev. Stat. §§ 34.800 and 34.726 are also adequate.

Lisle argues that Nev. Rev. Stat. §§ 34.800 (§ 34.800) and 34.726 (§ 34.726) are inadequate to support procedural default. Lisle appears to first argue that "the Nevada Supreme Court opinion was not clear and express in applying Nev. Rev. Stat. § 34.726 or § 34.800 to any specific claim." Dkt. 20, at 140 n.57.

Contrary to Lisle's argument, the Nevada Supreme Court clearly and unambiguously applied both bars to the petition. Addressing the default under § 34.726, the court stated, "Because Lisle filed his post-conviction petition 11 years after this court resolved his direct appeal, it was untimely under NRS § 34.726(1)." 27-ER-7808. The court then stated, "And as the State specifically pleaded laches, the petition was subject to dismissal under NRS § 34.800." 27-ER-7808. That court's application of both § 34.726 and § 34.800[9] clearly applied to all claims in the petition.

In contrast to the language the court used to apply bars to all claims in the

---

[9] The court also applied Nev. Rev. Stat. § 34.810(1)(b)(2). 27-ER-7808.

33

petition, the court indicated also that "*many of Lisle's claims* were barred by the doctrine of the law of the case." 27-ER-7808 (emphasis added).

"[F]ederal courts have 'no authority to impose mandatory opinion-writing standards on state court.'" *Klein v. Martin*, 607 U.S. 213, 221 (2026). All the more so when the state court decision in question clearly differentiates when it applied bars to all claims in the petition versus stating a bar applied to "many of Lisle's claims." 27-ER-7808.

The Court should reject Lisle's argument that the state court failed to state to which claims the state court applied the bars in § 34.726 and § 34.800. The language clearly indicates the court applied those bars to all claims in the petition.

Next, Lisle argues that § 34.726 is inadequate as to Lisle because the Nevada Supreme Court held in *Crump v. Warden*, 934 P.2d 247 (Nev. 1997), that "a habeas petitioner could file a petition long after the § 34.726 time had passed." Dkt. 20 at 141. Lisle also argues that Nevada law "suggested it was practically impossible to file a timely *Crump* petition." Dkt. 20 at 145. Lisle's argument fails.

First, *Crump* never discussed § 34.726. The court in *Crump* noted that "the district court relied extensively upon" § 34.810 when dismissing Crump's petition. 934 P.2d at 252. But the reason *Crump* never addressed § 34.726 is obvious. A subsequent Nevada Supreme Court decision recognized, *Crump* never addressed § 34.726, "because *Crump* filed his petition in 1989, before NRS 34.726 had been

34

adopted. *See* 1991 Nev. Stat., ch. 44, § 5, at 75-76 (adopting NRS 34.726); *id.* § 33, at 92 (providing that amendments did not apply to postconviction proceedings commenced before January 1, 1993)." *Rippo v. State*, 423 P.3d 1084, 1095 n.10 (Nev. 2018).

Second, Lisle's argument that § 34.726 first applied to second petitions only after the Nevada Supreme Court in *Pellegrini v. State*, 34 P.3d 519 (Nev. 2001)[10], is undercut by the court's statement in that case that, "We have previously applied the time bar at NRS 34.726 to successive petitions in published and unpublished dispositions," citing cases from 1995 and 1996, after the effective date of § 34.726 but before the subsequent decisions in *Crump*. 34 P.3d at 526 n.10. As Lisle noted, the court in *Pellegrini* expressly held § 34.726 now applied to successive petitions. Dkt. 20 at 143, citing 34 P.3d at 526.

This Court reviewed one of those cases cited by the state court in *Pellegrini* and determined that "the Nevada Supreme Court consistently applies it procedural rules to bar review of the merits of an untimely claim in the absence of a showing of cause and lack of prejudice to the State." *Moran v. McDaniel*, 80 F.3d 1261, 1268-70 (9th Cir. 1996). The Court specifically rejected Moran's claim that the Nevada Supreme Court does not consistently apply § 34.726. *Id.* at 1269-70.

---

[10] Abrogated on other grounds by *Rippo v. State*, 423 P.3d 1084,1097 n.12 (Nev. 2018).

35

The Nevada Supreme Court reaffirmed the application of § 34.726 to successive petitions. *State v. Eighth Judicial Dist. Ct. (Riker)*, 112 P.3d 1070, 1077 (Nev. 2005). And *Riker* recognizes that claims for cause to overcome procedural bars can themselves be procedurally defaulted. *Id.* So Lisle is wrong that *Riker* means there is no remedy under *Crump*. Dkt. 20 at 144. *Riker* just expounded on Hathaway, reinforcing the proposition that failing to raise claim for cause based on allegations of ineffective assistance counsel within a reasonable time of that claim becoming available, the claim for cause itself is procedurally defaulted. *Id.* But if the claim is brought within a reasonable time, and is not therefore procedurally defaulted, it may serve as cause to overcome Nevada's timeliness bar, in addition to the successive petition bar.

And this Court has continued to uphold the adequacy of § 34.726 supporting default of claims in post-conviction petitions after *Moran*. *Williams v. Filson*, 908 F.3d 546 (9th Cir. 2018) (Nev. Rev. Stat. § 34.726 consistently applied). In *Williams*, the Court recognized that in *Pellegrini* the Nevada Supreme Court held that NRS 34.726 applies to successive petitions.[11] *Id.* at 578.

Lisle argues that *Pellegrini* "put *Crump* in conflict with [§ 34.726]," based upon his earlier misstatement that the Nevada Supreme Court in *Crump* held, "a

---

[11] This contradicts Lisle's claim that *Pellegrini* or subsequent cases created confusion "because no petitioner could file a second petition that complied with Nev. Rev. Stat. § 34.726." Dkt. 20 at 144.

36

habeas petitioner could file a petition long after the § 34.726 time had passed." Dkt. 20 at 141. However, as Respondents noted above, the Nevada Supreme Court never addressed § 34.726 in *Crump* because the petitioner filed his successive petition before the effective date of Nev. Rev. Stat. § 34.726. *Rippo*, 423 P.3d at 1095 n.10. Therefore, *Crump* adds nothing to Lisle's claims regarding the adequacy of § 34.726 and likewise creates no confusion.

But even when accepting Lisle's argument at face value, another Nevada case undercuts his arguments about a conflict between Crump and § 34.726. As the Nevada Supreme Court explained in *Hathaway v. State*, 71 P.3d 503, 507-08 (Nev. 2003), Nevada law gave a petitioner an opportunity to overcome § 34.726 based on newly discovered grounds if "the petitioner filed a habeas corpus petition within a reasonable time after learning" of the new grounds. So even if there were tension between *Crump* and the time-bar, *Hathaway* cured the issue and required Lisle to act within a reasonable time, which he did not do.

Lisle notes that he filed his second state post-conviction petition in 2008. Dkt. 20 at 145. At that time, he knew that petitions alleging ineffective assistance of post-conviction counsel were subject to § 34.726. 27-ER-7809 (citing *Pellegrini* and *Riker*). And he knew that *Crump* existed. Just as it had in Riker in 2005, when relying on *Hathaway*, the Nevada Supreme Court explained that Lisle's "post-conviction counsel claims became available, at the latest, once this court resolved

37

the appeal from the denial of his first post-conviction petition." 27-ER-7809. The court therefore applied the time bar because Lisle "waited six years after the remittitur issued from that appeal" before filing his second petition. 27- ER-7809.

Finally, Lisle cites several unpublished decisions in support of his argument that § 34.726 is inadequate. Dkt. 20 at 144-45. However, Lisle fails to cite any case indicating anyone reasonably believed that a "reasonable time" under *Hathaway* permitted Lisle to wait until 2008 to file his petition, especially after *Riker* made clear that *Hathaway* applies in this context in 2005.

Lisle also argues that § 34.800 (laches) is inadequate to bar Lisle's default of claims in federal court. First, this Court has already said that the bar is adequate. *See, e.g., Moran*, 80 F.3d at 1269-70.

Lisle suggests otherwise by arguing § 34.800 is discretionary. Dkt. 20 at 146. In support of his argument he cites *Thomas v. State*, 510 P.3d 754, 775 (Nev. 2022), as well as several unpublished decisions. Dkt. 20 at 146.

However, the Nevada Supreme Court issued its decision in *Thomas* in 2022. And prior to *Thomas*, the court recognized that the bar was mandatory. 510 P.3d at 775 (citing *Riker*, 112 P.3d at 1074). Therefore, at the time that Lisle defaulted the claims in his 2008 petition, application of laches was mandatory.

Second, as explained above, *see supra* Argument, III(B)(1), the Supreme Court has held that discretionary bars are not per se inadequate. *Martin*, 562 U.S.

38

at 320; *see also Lee*, 578 U.S. at 608-09; *Kindler*, 558 U.S. at 60-62. And Lisle otherwise fails to explain here why the Nevada Supreme Court's application of Nev. Rev. Stat. § 34.800 is inadequate beyond suggesting "the permissive" nature of the bar renders it inadequate, an argument that does not survive *Kindler, Martin, and Lee*. Dkt 20 at 146-47.

Finally, Lisle argues "the Nevada Supreme Court failed to clearly and expressly apply the bar to Lisle's petition." Dkt. 20 at 147. However, as explained above, the Nevada Supreme Court applied the laches bar to the claims in Lisle's petition.

### C. *Martinez* Does Not Excuse Lisle's Defaults of Claims Raising Ineffective Assistance of Trial Counsel.[12]

Lisle alleges that *Martinez* excuses the default of his ineffective assistance of trial counsel claims (IAC). Dkt. 20 at 147. Lisle correctly notes that in order to excuse the default of his untimely claims of ineffective assistance of counsel, the Court must first find additional equitable tolling to excuse the untimeliness of his claims. Dkt. 20 at 148. However, Lisle failed to justify additional tolling. *See supra,* Argument II. Therefore, the Court need not address this issue because all of the defaulted trial IAC claims are also untimely.

---

[12] Claims addressed on the merits after briefing are not discussed because they were not defaulted.

In any event, these claims remain subject to dismissal as procedurally defaulted. "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel." *Martinez*, 566 U.S. at 9. A petitioner must also establish the underlying claim "is a substantial one," that has some merit. *Id*. at 14. An insubstantial claim is one that "does not have any merit or that it is wholly without factual support." *Id*. at 16.

The district court found several of Lisle's IAC claims defaulted, even after full briefing. The court first found that part 4 of Claim 8(A) (prosecutor use of "I think," "I know," and "I believe") was not improper, because the prosecutor referred to "their recollection of the testimony," "recollection of what the other prosecutor had said," or "to suggest inferences or conclusions that could be drawn from the evidence" and not to "suggest that they had information beyond" the testimony and other evidence." 1-ER-27-28. The court found the corresponding IAC claim not substantial. 1-ER-28.

In *Martinez*, the Court said that when addressing cause for a potential default, a State may assert that the IAC claim is "insubstantial, i.e., it does not have any merit or that it is wholly without factual support." 566 at 15-16.

Next, the Court determined part 3 of Claim 8(A) was not improper because the "prosecutor stated what penalties were 'available,' 'according to the

40

evidence.'" 1-ER-28. Therefore, the court found the underlying claim would me meritless and the related IAC claim was not substantial. 1-ER-28-29.

Finally, the court also found that part 4 of Claim 8(A) was proper argument that the jury should reject the defense inference the witness was lying. 1-ER-29. The court found the related IAC claim was not substantial. 1-ER-29.

The court rejected the IAC claim in Claim 16 (G) (trial counsel were ineffective with respect to their handling of the issue of severance). 1-ER-82. The court stated the claim in its entirety and found the claim "completely conclusory." Adding to the determination that Lisle's claim was defaulted, the court noted trial counsel objected to the failure to sever: (1) by filing a motion to sever; (2) moving for a mistrial; (3) objected to the redaction of Sykes's testimony; and (4) failed to state what more counsel should have done. 1-ER-82-83. The court determined the IAC claim was not substantial. 1-ER-83.

**D. Lisle Arguments Regarding Default of Claims 4 and 5.**

Lisle argues that the district court erred when determining that Lisle did not raise Claims 4 (erroneous admission of Lopez's confession) and 5 (trial court instructing a witness to fabricate testimony) when finding the claims procedurally defaulted. Dkt. 20 at 138. However, the district court already addressed these claims on the merits.

41

Lisle raised the identical issue in Claim 4 in Claim 16A, which alleged that the trial court erroneously denied severance of the defendants resulting in Lopez's statement to Melcher, made outside Lisle's presence, coming in as evidence. 4-ER-1024. The district court denied the claim on the merits. 1-ER-61-71. The issue raised on direct appeal, as cited by Lisle, is that the denial of severance resulted in the admission of Lopez's statement to Melcher. 16-ER-4522-24; *see also* Dkt. 20 at 138.

Lisle raised the identical issue in Claim 5 in Claim 16(C), which alleged that because of the denial of severance, false testimony was admitted. 4-ER-1025. The district court denied the claim on the merits. 1-ER-76-78.

## IV. The State Court Rejection Of Claim 8(C) Was Not Objectively Unreasonable. And If The Court Finds Error, It Did Not Deprive Lisle Of A Fair Trial.

This Court expanded the COA to address "whether the prosecutor committed misconduct as alleged in Claim 8(C)." Dkt. 43.

### A. Because the Trial Court Sustained Defense Counsels' Objection and Instructed the Jury to Disregard the Comment, no Error Occurred with Respect to the "Send A Message" Argument.

As the Nevada Supreme Court noted, the trial court sustained defense counsels' objection to the prosecutor's argument about sending a message and explicitly directed the jurors to disregard the comment. 17-ER-4730. The jurors are presumed to have followed the Court's instruction. *Weeks v. Angelone*, 528 U.S.

42

225, 234 (2000). So, unless Lisle can explain why that presumption is overcome here, there is no error to consider. This Court can, and should, affirm on that basis because this Court can affirm for any reason supported by the record. *United States v. Ortega-Asciano*, 376 F.3d 879, 885 (9th Cir. 2004) ("Even if the district court's reasoning was faulty, we may affirm the district court for any reason supported by the record."). So the trial court's order sustaining the objection and instruction to the jury to disregard the argument can, and should, stand on its own. In any event, the district court correctly rejected Lisle's claim for the reasons explained below.

**B. The Nevada Supreme Court Found Lisle's Claim Raising the "Send a Message" Argument Meritless.**

Lisle presented the allegation regarding the "send a message" comment on direct appeal. 16-ER-4560-61.[13] The brief never presented the two additional allegations of misconduct in Claim 8(C) of the fourth amended petition. 16-ER-4560-61.

The Nevada Supreme Court addressed the claim, first noting "Lisle's attorney made an objection, the judge sustained it, and admonished the jury to disregard those statements." 17-ER-4730. That court also recognized that "[T]he relevant inquiry is whether the comments were so unfair that they deprived the

---

[13] 16-ER-4560 is page 80 of the brief. 16-ER-4561 is page 79 of the brief.

43

defendant of due process." 17-ER-4730 (citing to *Witter v. State*, 921 P.2d 886, 897 (Nev. 1996), which cites *Darden v. Wainwright*, 477 U.S. 168 (1988)).

Under state law, the court found comments focusing on appropriate punishment and deterrence are proper but concluded that Lisle's argument was without merit. 17-ER-4731.

**C. The District Court Denied Lisle's "Send a Message" Claim.**

The district court denied Lisle's claim in Claim 8(C), finding that the state court ruling on the state habeas appeal was not objectively unreasonable. 1-ER-42. The court found "the send-a-message argument" improper. 1-ER-38. However, the court also found the "offending argument was not extensive or prominent within the context of the prosecutor's entire closing arguments." 1-ER-39. The court added that "the prosecutor did not misstate evidence" and "the argument was not amplified by any improper jury instructions, but rather was contradicted by instruction to the just about what they were to consider in choosing a sentence." 1-ER-39. The district court also recognized counsel's objection, and the trial court sustained the objection and "ordered the jury to disregard it." 1-ER-39.

That court cited this Court decision in *Floyd v. Filson*, 949 F.3d 1128, 1151-52 (9th Cir. 2020), which addressed a similar "send a message" claim. 1-ER-39-40. Comparing *Floyd* to Lisle's case, the district court concluded that based upon the limited nature of the improper argument, the instructions given to the jury, and that

44

"the trial court sustained the objection and ordered the jury to disregard the argument." 1-ER-40.

Applying AEDPA and *Darden*, the clearly established federal law, the district court found the state court's denial of Lisle's claim "was consistent with *Darden*." 1-ER-40.

### D. The Record, and *Darden* Supports the District Court's Determination That the Prosecutor's Comment did Not Deprive Lisle of a Fair Trial.

The state court record supports the district court's factual determinations, especially when considering the high bar for obtaining relief under *Darden*. Under *Darden*, a petitioner can only obtain relief on a misconduct claim if the prosecution's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." 477 U.S. at 181 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). Areas that raise constitutional concerns are: if the arguments "manipulate or misstate evidence" or other specific rights of the accused. *Id.*, at 182.

The weight of the evidence factors into the calculation. *Id.* And jurors are presumed to follow instructions. *Weeks*, 528 U.S. at 234. Lisle confessed his crimes to multiple persons before and after shooting Justin. 17-ER-4704-06. The district court also determined the comment was not extensive or prominent. 1-ER-39.

The jury instructions properly set forth the jury's duty when determining a sentence. First, the penalty phase instructions properly addressed the determinations the jury needed to make, including the fact that a jury need not sentence the defendant to death even if the prosecution establishes aggravating circumstances and the defendant presents no evidence in mitigation. 16-ER-4408-09. Next, the instructions set forth the burden of proof for establishing aggravating factors. 16-ER-4418. The instructions also informed the jury that in determining a sentence they are to consider the evidence and instructions. 16-ER-4418.

Finally, the instructions informed the jury that it is only the evidence and law, rather than arguments of counsel that govern the deliberations regarding the appropriate sentence. 16-ER-4426.

The state court record and the relevant law supports the district court's decision denying relief for Claim 8(C).

### E. That Court Found Lisle's Other Claim 8(C) Allegations Technically Exhausted and Procedurally Defaulted.

Addressing Lisle's two remaining allegations in Claim 8(C), the district court determined "on his direct appeal and his appeal in his first state habeas action, Lisle did not claim prosecutorial misconduct with respect to either of these arguments." 1-ER-41. The court concluded "these arguments are therefore subject to denial as procedurally defaulted." 1-ER-41.

Lisle's direct appeal brief never raised the claim. 16-ER-4560-61. Nor did the opening brief appealing the denial of the state habeas petition. 18-ER-5026-33.

The Supreme Court held that a petitioner defaults claims when there are no state court remedies available. *Coleman v. Thomspon*, 501 U.S. 722, 732 (1991). Lisle failed to demonstrate cause and prejudice to excuse this default. The district court determined that "Lisle made no argument that these parts of Claim 8(C) are not procedurally defaulted, or that he can overcome their procedural default." 1-ER-41. The court therefore found these two parts of Claim 8(C) procedurally defaulted.

In his brief, Lisle argues that regarding the other two comments, "The court held Lisle could not overcome the default via *Martinez* because it determined the accompanying ineffective assistance of trial counsel claims were insubstantial." Dkt. 20 at 137. However, he fails to address the substantive claims, which are the subject of the expanded COA. *See* Dkt. 43 at 1.

Lisle fails to demonstrate that he is entitled to relief based upon the prosecutorial misconduct claims in Claim 8(C).

/ / /

/ / /

/ / /

/ / /

47

## CONCLUSION

Based upon the law and arguments presented above, Respondents request the Court affirm the district court's dismissal of untimely and defaulted claims as well as the denial of Claim 8(C).

Dated: August 6, 2026.

AARON D. FORD
Attorney General

By:   /s/ Michael J. Bongard
       MICHAEL J. BONGARD
       Nevada Bar No. 007997
       Senior Deputy Attorney General

## STATEMENT OF RELATED CASES

The undersigned attests that to the best of his knowledge there one other case in this Court involving Lisle. *Lisle v. Gittere*, et al., case number 21-99009 (death penalty case). However, the certified issue in this case is not related to any issues in that case.

Dated: August 6, 2026.

AARON D. FORD
Attorney General

By:   /s/ Michael J. Bongard
MICHAEL J. BONGARD
Nevada Bar No. 007997
Senior Deputy Attorney General

49

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____22-99009_____

    I am the attorney or self-represented party.

    **This brief contains __10,896_____ words,** including ___0_____ words

manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The

brief's type size and typeface comply with FRAP 32(a)(5) and (6).

    I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[xx] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** ____s/ Michael J. Bongard_____ **Date** _____8/6/2026_____
*(use "s/[typed name]" to sign electronically-filed documents)*

50

## **CERTIFICATE OF SERVICE**

U.S. Court of Appeals Docket Number 22-99009

I hereby certify that I electronically filed the foregoing *Respondents-Appellees' Answering Brief* with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 6, 2026.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Randolph M. Fiedler
Stacy M. Newman
David S. Anthony
Assistant Federal Public Defenders
411 E. Bonneville Ave., Suite 250
Las Vegas, NV 89101


        */s/ M. Landreth*
        Employee of the Office of the Attorney General

51